```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

ROSANNE L. SABELLICO,

                Plaintiff,              MEMORANDUM & ORDER
                                           21-CV-2777(EK)
        -against-


COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Rosanne Sabellico challenges the Social Security Administration's denial of her claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Plaintiff's cross-motion.

## I. Background

**A. Procedural Background**

        In April 2018, Sabellico applied for disability benefits, alleging a disability onset date of February 10, 2017. Administrative Tr. ("Tr.") 85-86, ECF No. 9. The agency denied her claim in August 2018. *Id.* at 101-12. Sabellico appealed that decision to an administrative law judge ("ALJ"). On October 16, 2019, an ALJ held a hearing on Sabellico's claim. *Id.* at 66-84. The ALJ concluded that Sabellico was not disabled

and therefore not entitled to disability benefits. *Id.* at 8-40. The Appeals Council denied Sabellico's request for review of the ALJ's decision, rendering it final. *Id.* at 1-7. Sabellico timely sought review of that decision in this Court. ECF No. 1.

**B.  The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" her "physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations — the "Listed Impairments." *Id.* § 404.1520(a)(4)(iii), (d); *see also id.* pt.

2

404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled.  *Id.* § 404.1520(a)(4)(iii).

Here, ALJ Margaret Donaghy determined that Sabellico had not engaged in substantial gainful activity since the alleged onset date.  Tr. 13.  The ALJ also determined that Sabellico suffered from the following "severe impairments": bilateral headache, lumbar facet syndrome, lumbar radiculopathy, sciatica, somatic disorder, adjustment disorder, knee impairments status-post arthroscopic surgery, and a right thumb sprain.  *Id.* at 13-14.  However, the ALJ went on to determine that none of these impairments rose to the level of a Listed Impairment.  *Id*. at 14-17.

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, she must then determine (also as a part of step three) a claimant's residual functional capacity ("RFC").  20 C.F.R. § 404.1520(a)(4)(iv).  The RFC is the most a claimant can do in a work setting notwithstanding her limitations.  *Id.* § 404.1545(a)(1).  The ALJ concluded here that Sabellico had the RFC to perform a range of "light work," with certain limitations.  Tr. 18.  Sabellico could lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit for six hours in an eight-hour workday; but only occasionally climb, balance, stoop, kneel, crouch, and

crawl.  *Id.*  Due to "non-exertional impairments," the ALJ also limited her to "low stress work," which refers to work with only occasional decision-making, occasional changes in the work setting, and occasional interaction with coworkers and the public.  *Id.*

At step four, the ALJ considered whether, in light of the RFC determination, the claimant could perform "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv), (f).  Here, the ALJ found that Sabellico could not perform her past work as a manager and site manager at a senior citizens' program or as a teacher's assistant, based on a vocational expert's testimony.  Tr. 32.  At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v), (g).  Here, she determined that Sabellico could perform certain such jobs, including as a plastic products inspector, an assembler, and a weigher.  Tr. 33.  Given that conclusion, the ALJ determined — in a thorough and comprehensive opinion — that Sabellico was not disabled.  *Id.* at 35.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits.  42 U.S.C. § 405(g).  The review is limited to two questions: whether substantial evidence

4

supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[1] "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## II. Discussion

Sabellico raises two arguments on appeal. She argues, first, that the ALJ improperly evaluated the medical opinion evidence by discrediting the opinion of her pain-treatment specialist, Dr. Dmitri Petrychenko, in favor of the conclusions of the examining consultant, Dr. Lyudmila Trimba. Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 17-25, ECF No. 14. Second, Sabellico contends that the ALJ failed to adequately assess her subjective complaints of pain and her description of the limits on what she could do on a daily basis. *Id.* at 25-27. Neither claim has merit.

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

A.  **Medical Opinion Evidence**

Sabellico contends that the ALJ improperly discounted the August 26, 2019 pain assessment questionnaire provided by her treating physician — a pain-medicine specialist, Dr. Petrychenko.  Dr. Petrychenko, who had treated Sabellico every one to two months since October 2018, opined that her physical conditions significantly limited her ability to work.  *See* Tr. 1066-72.  He indicated, among other things, that she could never or rarely lift or carry more than ten pounds; could never or rarely use her right hand to grasp, twist, or turn objects and only occasionally use her left hand to do these activities; and would need to elevate both legs while sitting.  *Id.* at 1070-71.  Sabellico asserts that the ALJ erred by instead "relying exclusively" on the opinion of Dr. Trimba, who performed a consultative internal medicine examination in August 2018.  Pl. Mem. 23; *see* Tr. 600-03.

For claims filed after March 27, 2017 (like Sabellico's), the "treating physician rule" no longer applies.  *See Schillo v. Kijakazi*, 31 F.4th 64, 71 n.1 (2d Cir. 2022); 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.").[2]

---

[2] The regulation that contained the treating physician rule was repealed on January 18, 2017.  *See* Revisions to Rules Regarding the Evaluation of

6

Thus, the opinion of a treating physician is no longer presumptively entitled to controlling weight. Instead, all medical opinions are assessed against the same set of criteria: "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors," including familiarity with other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c)(1)–(5).

The first two factors above — supportability and consistency — are the "most important factors," *see id.* § 404.1520c(b)(2); accordingly, the ALJ is required to explain her consideration of them. *Id.* The regulation does not explicitly require the ALJ to explain her consideration of the remaining factors. *Id.* These are not especially formalistic requirements. In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision," so long as she has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

The ALJ considered the medical opinion evidence and examination records from multiple doctors, including:

---

Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (effective March 27, 2017).

7

Sabellico's treating pain specialist, Dr. Petrychenko; three separate doctors from whom she sought orthopedic treatment, Dr. Dante Trovato, Dr. Lewis Lane, and Dr. Lawrence Wiesner; and a consultative examiner, Dr. Lyudmila Trimba.  Tr. 18-32.  Applying the factors mandated by Section 404.1520c, the ALJ found that many aspects of Dr. Petrychenko's August 2019 assessment of Sabellico's limitations were "not persuasive." *Id.* at 31-32.  Contrary to Sabellico's assertions, the ALJ's decision reflects a reasoned consideration of each of Dr. Petrychenko's findings regarding her symptoms and functional limitations, in light of the medical evidence as a whole.

The ALJ found certain of Dr. Petrychenko's opinions — including that Sabellico could "never or rarely" lift or carry ten to twenty pounds, and had moderate to severe limitations in the use of her hands and fingers — were unsupported by his own treatment records and the medical evidence as a whole.  *Id.* at 31, 1070.  As the ALJ noted, for example, Dr. Petrychenko consistently found full 5/5 strength in all muscle groups tested, except for "slightly decreased strength" to 4/5 in her left shoulder, wrist, thumb, and biceps, and right wrist.  *Id.* at 22-23; *see id.* at 974, 978-80, 984, 989, 994-95, 999, 1010.  (The ALJ reasonably adduced that, while Dr. Petrychenko referred to reduced 4/5 strength of the *left* thumb, shoulder, wrist, and arm, he "possibly . . . intended to state *right*, as no other

8

records indicate left hand or arm problems." *See id.* at 22-23 (emphasis added)). Dr. Petrychenko's questionnaire responses are also ambiguous and incomplete as to Sabellico's limitations in lifting: the box checked provided a range of ten to twenty pounds, without specifying her abilities within that range; the portion of the form regarding her ability to lift less than ten pounds was left blank; and elsewhere, Dr. Petrychenko precluded only "lifting heavy objects." *Id.* at 23, 1069-70.[3] Finding the severe restrictions in Dr. Petrychenko's assessment unpersuasive, the ALJ reasonably included an RFC with a range of light work, with limitations as to her lifting and fingering. Tr. 18, 31-32.

The ALJ also found Dr. Petrychenko's opinion that Sabellico should avoid continuous sitting in an eight-hour workday and would need to elevate both legs while sitting either to waist level or to six inches or less was unsupported and inconsistent with the evidence. *Id.* at 23, 32, 1070. As the

---

[3] Numerous courts have noted the "limited value of the standardized check-box forms, which are considered 'only marginally useful for purposes of creating a meaningful and reviewable factual record.'" *Sabater v. Colvin*, No. 12-CV-4594, 2016 WL 1047080, at *5 n.6 (S.D.N.Y. Mar. 10, 2016) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004)); *see, e.g., Llorens-Feliciano v. Astrue*, No. 11-CV-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

9

ALJ observed, "no medical evidence or clinical findings of record, nor treatment records" — including Dr. Petrychenko's own examination notes — "indicate a need to elevate the legs to waist level." *Id.* at 23, 32.

The ALJ further considered Dr. Petrychenko's opinions against those of the consultative examiner. At an August 2018 physical examination, Dr. Trimba observed a normal gait; no need for help changing for the examination or getting on or off the examination table; the ability to rise from a chair without difficulty; full range of motion of the cervical and lumbar spine; full range of motion of the upper extremities; only slightly decreased range of motion of the knees; stable and nontender joints; full (5/5) strength in the upper and lower extremities; intact hand and finger dexterity; and full (5/5) grip strength. *Id.* at 21-22, 601-02. Dr. Trimba assessed, based on her examination and patient interview, a mild limitation in Sabellico's ability to sit for a prolonged time; mild to moderate limitations in her ability to stand and walk for a prolonged time; and other limitations in carrying heavy objects, frequent bending, squatting, and kneeling. *Id.* at 603. The ALJ found Dr. Trimba's conclusions to be supported by and consistent with her own clinical findings, as well as other medical evidence in the record. *Id.* at 21-22, 31.

10

Sabellico argues that the ALJ failed to identify any medical authority in the record showing that she could not have the limitations described by Dr. Petrychenko.  Pl. Mem. 20.  But in doing so, she ignores the ALJ's detailed review of the medical evidence as a whole, *see* Tr. 18-32, and fails to cite to any evidence that the ALJ overlooked in her assessment.  Nor does Sabellico explain how any of the record evidence she cites supports the specific functional limitations Dr. Petrychenko assessed.  *See* Pl. Mem. 21.  In any case, "whether there is substantial evidence supporting [Sabellico's] view is not the question here; rather, [the court] must [only] decide whether substantial evidence supports the ALJ's decision."  *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013).  Thus, even if "the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  That is the case here.

In addition, Sabellico challenges the evidentiary value that the ALJ gave to Dr. Petrychenko and Dr. Trimba's respective opinions, faulting the ALJ for not crediting her treating pain specialist and instead "relying exclusively" on a "one time consultant."  Pl. Mem. 23.  But this argument misapprehends the ALJ's consideration of the entire record under

11

the current regulations, which provide that the Commissioner "no longer needs to assign particular evidentiary weight to treating sources or their opinions." *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted sub nom. Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). Instead, the ALJ properly discussed the "most important factors" of supportability and consistency for each opinion, *see* 20 C.F.R. § 404.1520c(b)(2), and crafted an RFC in light of the evidence as a whole. To the extent that either evaluation of Sabellico's conditions was inconsistent with each other or other evidence, the ALJ was entitled to resolve any such conflicts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *Herrera v. Comm'r of Soc. Sec.*, No. 20-CV-7910, 2021 WL 4909955, at *9 (S.D.N.Y. Oct. 21, 2021) (upholding ALJ's determination which "noted and discussed" conflicting medical evidence and "arrived at a decision based on the record as a whole").

Sabellico's remaining arguments are without merit. She asserts that the ALJ failed to consider Dr. Petrychenko's treating relationship or specialty in pain medicine. Pl. Mem. 20. But the ALJ need not articulate her consideration of these factors, *see* 20 C.F.R. § 404.1520c(b)(2), and in any case, ALJ Donaghy did explicitly consider Dr. Petrychenko's relationship

12

with Sabellico. She noted that he had been treating her "every 1-2 months since October, 2018" for lower back pain and right hand pain, *see* Tr. 23, and as discussed above, relied on these treatment records in finding his August 2019 assessment inconsistent and unsupported. Nor did the ALJ err, as Sabellico suggests, by determining an RFC of light work, despite Dr. Trimba's opinion that she had "up to 'moderate'" limitations in her ability to stand and walk for prolonged periods of time. *See* Pl. Mem. 22. Dr. Trimba assessed "*mild to* moderate" limitations in prolonged standing and walking, *see* Tr. 22, 603 (emphasis added), and numerous courts have concluded that such limitations support a light work RFC. *See, e.g.*, *White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (upholding ALJ's inference that plaintiff could perform light work "on a full-time sustained basis" despite doctor's opinion that claimant had "moderate" limitations in standing, sitting, and performing other activities); *Gerry v. Berryhill*, No. 17-CV-7371, 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) (collecting cases).

In short, "the ALJ [is] entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole," even if "the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in [her] decision." *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d

13

Cir. 2018). Here, the ALJ's conclusions regarding the medical opinion evidence and Sabellico's limitations were supported by substantial evidence.

**B.   Sabellico's Subjective Complaints**

Sabellico also argues that the ALJ improperly discounted her subjective statements regarding her pain and symptoms. Pl. Mem. 25-27. She contends that the ALJ's assessment of her complaints was not supported by substantial evidence, but instead relies on the conservative nature of her medical treatment and her ability to perform "some activities of daily living." *Id.*

Section 404.1529(a) instructs ALJs to "consider all [of a claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015). An ALJ must therefore "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms," and "evaluate whether the statements are consistent with objective medical evidence and the other evidence." *SSR 16-3P*, 2017 WL 5180304, at *6 (S.S.A. Oct. 25, 2017). This evaluation requires a two-step process. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be

14

expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49. If so, the ALJ must then consider "the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.*

While an "ALJ is required to take the claimant's reports of pain and other limitations into account," she "is not required to accept [such] subjective complaints without question." *Id.* Instead, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* "If [the] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984). The Second Circuit has cautioned against "second-guess[ing]" the ALJ's decision to discount a claimant's statements about her symptoms "where the ALJ identified specific record-based reasons for [her] ruling." *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010); *see Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("[T]he ALJ is in a better position to decide issues of credibility.").

Here, the ALJ considered Plaintiff's subjective complaints and testimony in conformity with this standard and in light of the objective medical evidence. At the first step, ALJ

15

Donaghy determined that Sabellico's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 29. At the second step, however, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.*

That determination was supported by substantial evidence. Contrary to Sabellico's suggestion, the ALJ's assessment of her complaints did not rely only on the conservative nature of her treatment and daily living activities. Instead, the ALJ considered her testimony against the medical records — discussed in detail earlier in the decision, *see id.* at 18-28 — and concluded that, while Sabellico had severe impairments limiting her ability to perform certain work functions, such impairments were not "so severe as to preclude" her from performing basic work activities altogether. *Id.* at 30. Moreover, in assessing a claimant's credibility, the Commissioner's regulations *require* the ALJ to consider the type, dosage, effectiveness, and side effects of medication, and treatment other than medication, *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(v), as well as her range of daily activities, *id.* § 404.1529(c)(3)(i). Accordingly, the ALJ properly evaluated the evidence relating to these factors and

16

explained her reasoning as to each in discounting Sabellico's testimony.

As to the conservative nature of her treatment, the ALJ considered that her medication treatment — which included Tylenol with codeine, non-steroid anti-inflammatory drugs, and topical gels — were "not unusual for either type or dosage," appeared effective, and did not cause adverse side effects. Tr. 23, 30. The ALJ also observed that the steroid injections Dr. Petrychenko recommended were not unusual in type or dosage; even so, Sabellico consistently declined to pursue those recommendations and opted to continue with medication treatment only. *Id.; see id.* at 976, 981, 986, 990, 996, 1000-01, 1005, 1011. While Sabellico asserts that a finding of disability does not require a claimant to pursue surgery or other aggressive treatments, *see* Pl. Mem. 26, nowhere in the relevant discussion of her treatment did the ALJ cite to or rely on her lack of surgery.

The ALJ also considered evidence indicating that Sabellico was engaged in a "reasonably broad range of daily living activities, with moderate limitations" in some areas, based on her statements that she could perform personal care; cook, clean, and shop at least at a light level; travel independently; and drive. Tr. 30. This evidence, which the ALJ was required to consider, likewise supports her finding that

17

Sabellico's statements about the severity of her conditions were less than fully credible. *See, e.g.*, *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ "properly found" that claimant's testimony was "not fully credible," based in part on his reported daily activities, which included caring for his one-year-old son, sometimes vacuuming and washing dishes, and occasional driving); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980) (claimant's "testimony did not preclude the possibility that she could perform gainful activity of a light, sedentary nature," where she indicated that she could "cook, sew, wash and shop, so long as she does these chores slowly and takes an afternoon rest").

Finally, the ALJ was entitled to consider Dr. Thomas Myers' findings, based on neuropsychological examinations conducted in early 2018, that Sabellico "perceive[d] herself as having far greater deficits than is the case when her cognitive functioning is objectively assessed." Tr. 30-31, 521. Indeed, Dr. Myers advised a return to work, opining that, from a neuropsychological standpoint, returning to her previous work routine would likely improve her mood symptoms and that "current evaluation findings would suggest that she is more capable of engaging in activities than she believed she is capable of." *See id.* at 27, 521-22. That part of the medical record likewise bears on Sabellico's credibility.

Ultimately, the ALJ took Sabellico's reported symptoms into account in crafting a more narrowed RFC of light work, with a number of physical and mental limitations.  *Id.* at 18.  This reflects the ALJ's consideration of Sabellico's testimony and its consistency with other record evidence.

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies Sabellico's motion.  The Clerk of Court is respectfully requested to enter the judgment and close the case.

SO ORDERED.

                                                                                                                      /s/ Eric Komitee  
                                                                  ERIC KOMITEE  
                                                                  United States District Judge

Dated:    September 25, 2023  
            Brooklyn, New York